1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ZKEY INVESTMENTS, LLC,        )    CV No. 16-00782-RSWL-KS
                                  )
12              Plaintiff,        )
                                  )    **ORDER Re: DEFENDANT'S**
13              v.                )    **MOTION FOR SUMMARY**
                                  )    **JUDGMENT [53]**
14  FACEBOOK INC.,                )
                                  )
15                                )
                                  )
16              Defendant.        )
    _____)

17                    **I.   INTRODUCTION**

18        Currently before the Court is Defendant Facebook,

19  Inc.'s ("Defendant") Motion for Summary Judgment

20  ("Mot.") [53] against Plaintiff Zkey Investments, LLC

21  ("Plaintiff").   The Court, having reviewed all papers

22  and arguments submitted pertaining to this Motion, **NOW**

23  **FINDS AND RULES AS FOLLOWS:** Defendant's Motion for

24  Summary Judgment [53] is **GRANTED.**

25  ///

26  ///

27  ///

28  ///

## II.  BACKGROUND

**A.  <u>Factual Background</u>**

Plaintiff's action alleges that Defendant's online networking services infringe on United States Patent No. 6,820,204 ("'204 Patent") in violation of 35 U.S.C. § 271.

Plaintiff is a limited liability company existing under the laws of Delaware with its principal place of business in New York.  Compl. 1:5-7, ECF No. 1. Plaintiff owns the '204 Patent, entitled "System and Method for Selective Information Exchange" and has the right to sue and recover damages for infringement thereof.  <u>Id.</u> at 4:2-6.  The '204 Patent's abstract describes the invention as follows:

> A system and method for providing users with
> granular control over arbitrary information
> that allows for selective, real-time
> information sharing in a communications network
> such as the Internet is provided. In a network
> including a plurality of network devices
> operated by a plurality of users, a real-time
> information exchange system for sharing user
> profile information between respective users
> includes a database management system connected
> to the network. The database management system,
> which may be distributed across the network,
> stores the user profile information for a
> plurality of registered users of the

1    information exchange system. The user profile
2    information includes a plurality of data
3    elements, each data element having an
4    associated one of the plurality of registered
5    users. Each data element has an associated
6    group of users to whom access to the data
7    element has been granted, and users not
8    included in the associated group of users are
9    denied access to the data element. Each
10   registered user may selectively control the
11   granting and denying of access to each of its
12   associated data elements by other respective
13   users, on an element-by-element, and user-by-
14   user basis. Further, each registered user may
15   dynamically create its own data fields.
16   Id. at Ex. 1.

17   Defendant is a Delaware corporation with its
18   headquarters in Menlo Park, California.  Id. at 1:8-9.
19   Defendant also maintains California offices in Los
20   Angeles and Woodland Hills.  Id. at 1:10-11.  Defendant
21   provides online networking services ("Facebook
22   Networking Services"), mobile applications, plug-ins,
23   and other tools in the United States.  Id. at 2:27-3:2.
24   Facebook Networking Services are provided by a
25   multitude of Facebook-controlled servers, including,
26   but not limited to, web servers and database servers.
27   Id. at 3:2-4.  Facebook's "mission is to give people
28   the power to share and make the world more open and

1  connected." Id. at 3:7-8.  In order to achieve this,
2  various user profile information can be stored,
3  including "Work and Education," "Places You've Lived,"
4  "Contact and Basic Info," "Family and Relationships,"
5  "Details About You," and "Life Events." Id. at 3:8-11.
6  Users are allowed to limit access to this information.
7  Id. at 3:11-13.  For example, users can limit access to
8  the "Address" portion of their "Contact and Basic Info"
9  user profile to the "Public," "Friends," "Close
10  Friends," "Family," or "Specific People or Lists,"
11  including the ability to deny particular users access.
12  Id. at 3:13-17.

13      Plaintiff alleges that Defendant's manufacturing
14  and uses of the system that implements Facebook
15  Networking Services infringes numerous claims of the
16  '204 Patent, including at least claims 1-2.  Id. at
17  4:7-11.  Claim 1 of the '204 Patent recites:

18      In a network including a plurality of network
19      devices operated by a plurality of users, a
20      real-time information exchange system for
21      sharing user profile information between
22      respective users:
23      a database management system connected to the
24      network and storing the user profile
25      information for a plurality of registered users
26      of the information exchange system, the user
27      profile information including a plurality of
28      data elements, each data element having

4

associated one of the plurality of registered
users; wherein each data element has an
associated subset of users to whom access to
the data element has been granted; and wherein
users not included in the associated subset of
users are denied access to the data element.

Mace Decl., Ex. 1.  Claim 2 of the '204 Patent recites:

The information exchanging system of claim 1
further including:

a profile management application executing on
the information exchange system, the profile
management application providing each
respective user with facilities to selectively
control the granting and denying of access to
each of its associated data elements by other
respective users.

Id.

**B.   Procedural Background**

On February 4, 2016, Plaintiff filed a Complaint in
the United States District Court, Central District of
California.  In the Complaint, Plaintiff brings a claim
of patent infringement seeking injunctive relief and
damages in violation of 35 U.S.C. § 271.  ECF No. 1.
On June 3, 2016, Defendant filed an Answer to
Plaintiff's Complaint.  ECF No. 42.

On August 30, 2016, Defendant filed a Motion for
Summary Judgment of Invalidity under 35 U.S.C. § 101.
ECF No. 53.  On August 30, Defendant also filed a

1  Statement of Uncontroverted Facts and Conclusions of
2  Law.  ECF No. 54.  On September 27, 2016, Plaintiff
3  filed an Opposition.  ECF No. 57.  On September 27,
4  2016, Plaintiff also filed a Statement of Genuine
5  Disputes.  ECF No. 59.  On October 11, 2016, Defendant
6  filed a Reply.  ECF No. 60.  On October 24, 2016,
7  Plaintiff filed an Objection to Defendant's New
8  Evidence First Submitted in Defendant's Reply to the
9  Motion for Summary Judgment.  ECF No. 64.  On October
10 25, 2016, Defendant filed a Response to Plaintiff's
11 Objection.  ECF No. 65.  On November 2, 2016, Plaintiff
12 filed a Notice of Supplemental Authority in Opposition
13 to Defendant's Motion.  ECF No. 66.

## III.  DISCUSSION

### A.  **Legal Standard**

14
15
16    1.  <u>Summary Judgment Standard</u>

17     Federal Rule of Civil Procedure 56 states that a
18 "court shall grant summary judgment" when the movant
19 "shows that there is no genuine dispute as to any
20 material fact and the movant is entitled to judgment as
21 a matter of law."  Fed. R. Civ. P. 56(a).  A fact is
22 "material" for purposes of summary judgment if it might
23 affect the outcome of the suit, and a "genuine issue"
24 exists if the evidence is such that a reasonable fact-
25 finder could return a verdict for the non-moving party.
26 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
27 (1986).  The evidence, and any inferences based on
28 underlying facts, must be viewed in the light most

favorable to the opposing party.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983).  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact.  <u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03; <u>see</u> Fed. R. Civ. P. 56(a).  Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial."  <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact."  <u>Anderson</u>, 477 U.S. at 247-48.

///

1        2.    Patent Eligibility Under 35 U.S.C. § 101

2      Patent-eligibility is a question of law. OIP

3 Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362

4 (Fed. Cir. 2015). Section 101 of the Patent Act

5 provides that a patent may be obtained for "any new and

6 useful process, machine, manufacture, or composition of

7 matter, or any new and useful improvement thereof." 35

8 U.S.C. § 101. The Supreme Court has "long held that

9 this provision contains an important implicit

10 exception: laws of nature, natural phenomena, and

11 abstract ideas are not patentable." Alice Corp. Pty.

12 v. CLS Bank, Int'l, 134 S. Ct. 2347, 2354 (2014). "The

13 concern that drives this exclusionary principle" is

14 "one of preemption." Id. In other words, the concern

15 is "'that patent law not inhibit further discovery by

16 improperly tying up the future use of' these building

17 blocks of human ingenuity." Id. (quoting Mayo

18 Collaborative Servs. v. Prometheus Labs, Inc., 132 S.

19 Ct. 1289, 1301 (2012)). The Supreme Court in Alice

20 warns courts, however, to "tread carefully in

21 construing this exclusionary principle lest it swallow

22 all of patent law," because "[a]t some level, 'all

23 inventions . . . embody, use, reflect, rest upon, or

24 apply laws of nature, natural phenomena, or abstract

25 ideas.'" Id. (quoting Mayo, 132 S. Ct. at 1293).

26      Under the two-step framework established in Alice

27 and Mayo, the court first asks "whether the claims at

28 issue are directed to one of those patent-ineligible

concepts," as opposed to "patent eligible applications of those concepts." _Id._ at 2354-55. If so, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." _Id._ at 2355 (quoting _Mayo_, 132 S. Ct. at 1297-98). In this second step, the court looks for an "inventive concept," or "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" _Id._ (quoting _Mayo_, 132 S. Ct. at 1294).

This standard is easier to articulate than it is to apply. _Modern Telecom Sys. LLC v. Earthlink, Inc._, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *6 (C.D. Cal. Mar. 17, 2015). "The line between a patentable 'process' and an unpatentable 'principle' is not always clear," _Parker v. Flook_, 437 U.S. 584, 589 (1978), and the Federal Circuit has referred to § 101 jurisprudence as a "murky morass." _MySpace, Inc. v. GraphOn Corp._, 672 F.3d 1250, 1259 (Fed. Cir. 2012) (suggesting, in dicta, that "courts could avoid the swamp of verbiage that is § 101" by addressing patentability defenses under §§ 102, 103, and 112 before addressing patent eligibility under § 101).

///

///

**B. <u>Analysis</u>**

    1.   <u>The Claims of the '204 Patent Are Abstract and</u>

        <u>Fail Under Step One of the Alice/Mayo Inquiry</u>

As an initial matter, some courts have commenced patent-eligibility analysis under § 101 by engaging in claim construction to understand the subject-matter at issue. However, claim construction is not required in every § 101 analysis and in the current case before the Court claim construction is not required.[1]

Under the first step of the <u>Alice</u>/<u>Mayo</u> inquiry, the Court must determine whether the patent claims at issue are directed to an abstract idea. Defendant alleges that the claims in the '204 patent are directed to an abstract idea "of allowing individuals to manage and selectively share with others items of information about themselves." Mot. 1:10-12. Defendant argues that the '204 Patent acknowledges that people have selectively shared information with others about

---

    [1] <u>Wolf v. Capstone Photography, Inc.</u>, No. 2:13-cv-09573, 2014 WL 7639820, at *5 (C.D. Cal. October 28, 2014); <u>Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)</u>, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); <u>Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n</u>, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Some courts have found that doing a § 101 analysis without claim construction is an efficient use of court resources and saves on litigation costs because claim construction is needed before a § 101 analysis "'only where claim construction disputes are relevant.'" <u>Wolf</u>, 2014 WL 7639820 at *6 (quoting <u>I/P Engine, Inc. v. AOL Inc.</u>, Nos. 2013-1307, 2013-1313, 2014 WL 3973501, at *12 (Fed. Cir. Aug. 15, 2014)). However, as neither party brought up the issue of claim construction and the matter can be resolved without claim construction, this is not an issue the Court needs to address.

1  themselves without the aid of computer technology.  Id.

2  at 2:18-25.

3       There is no clear rule or category that must be

4  analyzed in determining what constitutes an abstract

5  idea.  Enfish LLC v. Microsoft Corp., 822 F.3d 1327,

6  1334 (Fed. Cir. 2016).  The Supreme Court has not

7  established a definitive rule to determine what

8  constitutes an "abstract idea" sufficient to satisfy

9  the first step of the Alice/Mayo inquiry.  Id.  Rather,

10  courts have compared claims at issue to previous cases

11  in determining whether the claims at issue are directed

12  to an abstract idea.  Id. at 1334-35.

13       To determine whether a claim is directed to an

14  abstract idea, courts must identify the purpose of the

15  claim, that is "what the claimed invention is trying to

16  achieve" and if that purpose is abstract.  Cal. Inst.

17  Tech. v. Hughes Commc'ns, Inc., 59 F. Supp. 3d 974,

18  991-92 (C.D. Cal. 2014).  Despite Plaintiff's efforts,

19  Plaintiff fails to convince this Court that the claims

20  in the '204 Patent are not abstract.  Plaintiff's

21  description of the '204 Patent as a "networked, real-

22  time electronic information exchange system that

23  permits a user to exercise granular control over access

24  to specific data elements in a user profile stored by a

25  database management system" does not change the very

26  premise and purpose of the patent.  Opposition (Opp'n)

27  11:10-13.  The invention's purpose is to allow users to

28  have "granular control" over specific information that

11

is stored by a database.  Users can then choose who is granted and denied access to this information.  The information can be pre-populated, or users have the option to create new categories of information for the database to store, such as a favorite beer, as Plaintiff suggests.  Id. at 9:17-21.  However, the computer-related terms used by Plaintiff do not change the purpose of the '204 Patent-users are able to have control of what information is stored in the database and who has access to the information as it is updated in real-time.

Similar to Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) cert. denied 136 S. Ct. 119 (2015), claim 1 of the '204 Patent is directed to the abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory."[2]  Claim 1 is directed at providing a method for people to collaborate and share information without the need for specialized software

---

[2] Claim 1 of the '204 Patent states that "[i]n a network including a plurality of network devices operated by a plurality of users, a real-time information exchange, system for sharing user profile information between respective users of the network devices, compromising: a database management system connected to the network and storing the user profile information....the user profile information including a plurality of data elements...wherein each data element has an associated subset of users to whom access to the data element has been granted; and...users not included in the associated subset of users are denied access to the data element."  Mace Decl., Ex. 1 at 64.

or expertise.  Open Text S.A. v. Box, Inc., 78 F. Supp. 3d 1043, 1046-47 (N.D. Cal. 2015).

In In re TLI Communications LLC Patent Litigation, 823 F.3d 607, 611 (Fed. Cir. 2016), the court held the claim in the patent was directed to an abstract idea because images were classified and stored based on the classification.  The court noted that the server was described "simply in terms of performing generic computer functions such as storing, receiving, and extracting data."  Id. at 612.  There is a difference in a claim which focuses on an "improvement to computer functionality itself" rather than a claim which is simply implemented on a computer.  Affinity Labs of Texas, LLC v. DirecTV, LLC, 838 F.3d 1253, 1258-62 (Fed. Cir. 2016); Alice, 134 S. Ct. at 2358. The court in Bascom Global Internet Srvcs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1346 (Fed. Cir. 2016), noted that "filtering content" or "determining who gets to see what" is a well-known "method of organizing human activity" in step one of the Alice/Mayo analysis.  The court in Alice also held that the concept of intermediated settlement without more was also an abstract concept not patent-eligible.  134 S. Ct. at 2356-57.

Similarly, the remaining claims of the '204 Patent are also directed towards an abstract, patent-ineligible concept as they are mostly dependent claims on claim 1 and are the means by which information is

1  collected, analyzed, and displayed based on the user's

2  granting or denial of access to other registered and

3  non-registered users.[3]   Electric Power Group, LLC v.

4

5        [3] Claim 2 is dependent on claim 1 as it includes "a profile
management system, the profile management application providing
6  each respective user with facilities to selectively control the
granting and denying of access to each of its associated data
7  elements by other respective users."   Mace Decl., Ex. 1 at 64.
Claim 3 is the system of claim 2 where "the user profile
8  information includes a set of pre-defined data fields" and where
the application is "adapted to dynamically create new data fields
9  for storing a new data element, upon the request of a registered
user."   Id.   Claim 5 is the system of claim 4 where the "database
10 management system" is connected to the network through a
"physical firewall" and adapted to store the information the user
11 inputs.   Id.   Claim 8 is the system of claim 4 where the
application provides each user with facilities to "push
12 individual data elements to respective users."   Id.   Claim 9 is
the system of claim 4 where at least one network device has
13 synchronization software which detects network connectivity and
downloads updated information about each user.   Id.   Claim 10 is
14 the system of claim 9 where the application gives each user
facilities to define views of the user's profile information
15 where each view includes at least one data element of the user.
Id.   Claim 11 is the system of claim 10 where the application
16 gives each user facilities to define user groups where there is
at least one user in each group and each user can selectively
17 grant or deny members of each group access.   Id.   Claim 16 is an
independent claim similar to claim 1 and is a "database
18 management system" which stores a "subset of the user profile
data for a plurality of registered users of the information
19 exchange system, the first subset of profile information
including a plurality of data elements, each data element having
20 an associated one of the plurality of registered users; and a
first network server connected to the network and the first
21 database management system, the first network server including: a
first processor; and a first program memory connected to the
22 first processor and having program instructions stored therein,
the first processor being operable to execute te program
23 instructions, the program instructions: for each registered user,
selectively granting and denying access to each of the registered
24 user's associated data elements, to other users in the network."
Id. at 65.   Claim 17 is the system of claim 16 where there is a
25 second database storing a second subset of the user profile data
for a plurality of users of the system with a second network
26 server, processor and program memory.   Id.

27

28
                              14

1  Alstom S.A., 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).

2  When information is analyzed by steps that people can

3  go through in their minds or by mathematical

4  algorithms, courts have found these are mental

5  processes that fall within the abstract concept

6  category of step one.  Id. (citing see TLI, 823 F.3d at

7  613; Digitech Image Techs., LLC v. Elecs. for Imaging,

8  Inc., 758 F.3d 1344, 1351 (Fed. Cir. 2014); SmartGene,

9  Inc. v. Advanced Biological Labs., SA, 555 F. App'x

10 950, 955 (Fed. Cir. 2014); Bancorp Servs., LLC v. Sun

11 Life Assurance Co. of Canada (U.S.), 687 F.3d 1266,

12 1278 (Fed. Cir. 2012); CyberSource Corp. v. Retail

13 Decisions, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011);

14 SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319,

15 1333 (Fed. Cir. 2010); see also Mayo, 132 S. Ct. at

16 1301; Parker v. Flook, 437 U.S. 584, 589-90 (1978);

17 Gottschalk v. Benson, 409 U.S. 63, 67, 93 (1972)).

18 While Walker Digital, LLC v. Google, Inc., 66 F. Supp.

19 3d 501, 515 (D. Del. 2014) is not binding precedent on

20 this Court, the court there makes a persuasive argument

21 regarding ideas that can be performed entirely in one's

22 own mind and finding that routine and conventional step

23 is not patentable subject matter.  The Federal Circuit

24 in CyberSource, 654 F.3d at 1373, also held that

25 methods which can be performed in the human mind are

26 the very types of methods that embody "the basic tools

27 of scientific and technological work" free to all

28 persons.  Furthermore, "merely presenting the results

of abstract processes of collecting and analyzing
information, without more (such as identifying a
particular tool for presentation), is abstract as an
ancillary part of such collection and analysis."
Electric Power Group, 830 F.3d at 1354.  Claims 2-3, 5,
8-11, and 16-17 are claims derived from claim 1 whereby
the users are able to selectively choose who is granted
and denied access to their user profile information and
illustrate the results of collecting and analyzing
information and are also directed to an abstract
concept.

     Plaintiff's argument that the '204 Patent is not
abstract is unpersuasive.  It appears Plaintiff only
relies on Enfish and Bascom to support its contention
that the '204 Patent is not abstract.  Plaintiff
asserts that when the claims of the '204 Patent are
viewed as a whole, they are directed to "concrete
improvements to database management systems for
electronic information exchange systems" and not
directed to an abstract idea.  Opp'n 1:2-5.  The claim
limitations clearly show that the system improves
computer functionality and does not implement just a
well-known economic practice using general computer
components.  Id. at 1:5-8.  The claims are "directed to
a real-time information exchange system with a database
management system that stores user profile information
for a plurality of networked users."  Id. at 1:19-21.
Plaintiff also asserts the "database management system

provides customizable features specific to each user"
by giving "granular control" to each user in deciding
which elements may be accessed by other particular
users.  Id. at 1:22-25.  Not only can users determine
what information to share with specific users, a user
may also create "new user-defined data fields within
the database."  Id. at 5:1-2.  Plaintiff asserts the
limitations in claims 2-3, 5, and 8-11 all improve the
functionality of the system and are not directed to an
abstract idea.  Id. at 14:1-11.  Moreover, the fact
that users can create new data fields to store
information is an improvement over prior art systems
because the user has granular control over who can
access the information and what information is stored
in the database.  Almeroth Decl. 19:18-25.

     The claims of the '204 Patent are unlike the claims
in Enfish because here, the claims are not focused on
improvement to computer functionality but are more
focused and tailored to the use of computers "as tools
in aid of processes focused" on an abstract concept.
Electric Power Group, 830 F.3d at 1354; Enfish, 822
F.3d at 1335-36.  And in Bascom, the court found that
filtering internet content is an abstract idea because
"it is a longstanding, well-known method of organizing
human behavior."  Bascom, 827 F.3d at 1348.  Plaintiff
has failed to show any genuine dispute as to any
material fact that the claims of the '204 are not
directed to an abstract concept and are therefore

1  patent-eligible subject matter under § 101.   Therefore,

2  the Court finds that the claims of the '204 Patent are

3  directed towards the abstract idea of collecting,

4  storing, and sharing information of registered users

5  with other registered and non-registered users.

6      2.  The Claims of the '204 Patent Fail to Add an

7          Inventive Concept and Fail Step Two of the

8          Alice/Mayo Inquiry

9      If the threshold determination that the claims are

10  directed to an abstract idea is met, we move to the

11  second step of the inquiry and "consider the elements

12  of each claim both individually and 'as an ordered

13  combination' to determine whether the additional

14  elements 'transform the nature of the claim' into a

15  patent-eligible application." Enfish, 822 F.3d at

16  1334–35 (quoting Mayo, 132 S. Ct. at 1297–98).   Having

17  determined that the patent-in-suit is directed to an

18  abstract idea, the Court must determine whether the

19  patent includes "additional features to ensure that the

20  claim[s] [are] more than a drafting effort designed to

21  monopolize the abstract idea." Alice, 134 S. Ct. at

22  2357.  "Those 'additional features' must be more than

23  'well-understood, routine, conventional activity.'"

24  Ultramercial, Inc. and Ultramercial, LLC v. Hulu, LLC,

25  772 F.3d 709, 715 (Fed. Cir. 2014) (quoting Mayo, 132

26  S. Ct. at 1298).   The "mere recitation of a generic

27  computer cannot transform a patent-ineligible abstract

28  idea into a patent-eligible invention." Alice, 134 S.

18

1  Ct. at 2358.

2      Defendant argues that the claims of the '204 Patent

3  do not add any inventive concept to turn the abstract

4  idea into a patent-eligible form.  Defendant asserts

5  the claims merely "recite textbook examples of the

6  types of generic computer components that do not supply

7  inventive concept" as set forth in Alice.  Mot. 13:23-

8  27.  Claim 1 merely recites generic and conventional

9  computer terms such as "network," "network device," and

10  "database management system."  Id. at 14:1-3.

11  Plaintiff argues that the '204 Patent is an inventive

12  concept in computer technology that overcomes existing

13  problems.  Opp'n 18:8-9.  The database management

14  system provides unique, customizable features to each

15  user such as giving them granular control over each

16  data element and the content of their profiles.  Id. at

17  18:11-18.  Prior systems did not adequately control

18  access to the user's information and did not give

19  granular control over their stored information.  Id. at

20  19:8-10.  Moreover, prior systems required multiple

21  databases, which resulted in information needing to be

22  updated in more than one database when a user wanted to

23  update information.  Id. at 19:18-24.  Additionally,

24  users can give access to the information to non-

25  registered users which is a significant advancement

26  over conventional information exchange systems because

27  it provides a "discrete user interface facility that

28  selectively associates data elements with authorized

1  users." Id. at 22:22-28.

2      Here, the claims of the '204 Patent are computer

3  functions that are "purely conventional." Alice, 134

4  S. Ct. at 2359 (quoting Mayo, 132 S. Ct. at 1298).

5  Despite Plaintiff's assertions that the claims

6  separately and when looked at in combination show that

7  the '204 Patent is a "networked, real-time information

8  system with a database management system that stores

9  user profile information for a plurality of network

10  users," it is similar to the case in Alice in that it

11  "amounts to electronic recordkeeping-one of the most

12  basic functions of a computer." Opp'n 18:10-12; Alice,

13  132 S. Ct. at 2359.  The '204 Patent explains a system

14  whereby users input either pre-defined or "dynamically"

15  new user information and from that select either other

16  registered or non-registered users from whom may or may

17  not have access to the user's information.  "[A]ll of

18  these computer functions are 'well-understood, routine

19  conventional activit[ies]' previously known to the

20  industry." Alice, 132 S. Ct. at 2359 (quoting Mayo,

21  132 S. Ct. at 1294).  Claim 1 is merely a database

22  system connected to a network where information is

23  stored and each piece of information is connected to a

24  registered user and associated with a set of users who

25  have access to that specific piece of information.

26  Claim 2 further illustrates this with a "profile

27  management application" that each user can selectively

28  control who is granted and denied access to each piece

of information.  Courts have held that a "generic computer technology allow[ing] for a more efficient process does not confer patent eligibility."  <u>Wolf</u>, 2014 WL 7639820 at *13.  The remaining claims also do not add an inventive concept sufficient to transform this abstract concept into patent-eligible subject-matter.[4]  <u>Alice</u>, 134 S. Ct. at 2358; (quoting <u>Mayo</u>, 132 S. Ct. at 1294).

Similarly, as in <u>OIP Technologies</u>, 788 F.3d at 1362-64, the claims in the '204 Patent considered individually or as an "ordered combination" recite "'well-understood, routine conventional activit[ies],' either by requiring conventional computer activities or routine data-gathering steps" and do not "transform" the abstract concept into patent-eligible subject-

_____

[4] The fact that the system has pre-defined "data fields" for data users or that users can "dynamically create new data fields," is not an inventive concept.  Moreover, claims 4 and 5 describe multiple databases with one central database, which is nothing more than the routine steps in data-gathering and do not provide for an inventive concept.  Claim 8 provides for "facilities" for users to "push" data to other users and claim 9 is software to detect the network's connectivity and download information that has been inputted by a user, however Plaintiff fails to show how that is an inventive concept any different from conventional computer activities.  Claims 10 and 11 also do not show an inventive concept as they describe limitations in providing users with "facilities" to define views and user groups of their profile information but do not describe how these limitations are actually implemented and in what way, if any, they provide for an improvement in computer functionality.  Claims 16 and 17 also recite a generic computer with "mere instruction to 'implemen[t]' an abstract idea 'on...a computer'" which does not transform the abstract concept into patent-eligible subject-matter.  <u>Alice</u>, 134 S. Ct. at 2358 (quoting <u>Mayo</u>, 132 S. Ct. at 1301).

matter.  <u>Alice</u>, 134 S. Ct. at 2358; (quoting <u>Mayo</u>, 132
S. Ct. at 1294).  Utilizing a network to receive and
send information "is not even arguably inventive."
<u>BuySAFE, Inc. v. Google, Inc.</u>, 765 F.3d 1350, 1355
(Fed. Cir. 2014).

 The claims of the '204 Patent are different than
those of the patent in <u>Bascom</u> where the court held that
the patent there claimed a "technology-based solution
(not an abstract-idea-based solution implemented with
generic technical components in a conventional way) to
filter content on the Internet that overcomes existing
problems with other Internet filtering systems."  827
F.3d at 1351.  Here, the claims of the '204 Patent do
not do the same as in <u>Bascom</u>.  The claims in the '204
Patent merely recite how a computer is utilized to do
the conventional tool of recording data information
from a user, storing that data, and releasing the data
to an approved group of registered or non-registered
users chosen by the user whose information is stored.
The claims do not improve the functioning of a computer
itself, however merely describe a manner in which to
store and share information.  Courts have held that
"generic computer implementation," such as claims that
add "interface," "network," and "database" is
insufficient to transform a patent-ineligible abstract
concept into a patent-eligible concept.  <u>Alice</u>, 134 S.
Ct. at 2352-57; <u>Affinity Labs</u>, 838 F.3d at 1264; <u>Mayo</u>,
132 S. Ct. at 1297.

1    Plaintiff provided this Court with the Federal
2 Circuit's recent decision in Amdocs (Israel) Limited v.
3 Openet Telecom, Inc., No. 2015-1180, 2016 WL 6440387,
4 at *10 (Fed. Cir. Nov. 1, 2016), where the court held
5 that the patent did provide an inventive concept
6 because the components described in the patent were
7 arranged in such a way to "achieve a technological
8 solution to a technological problem specific to
9 computer networks." However, the case before us is
10 distinguishable from Amdocs.  In Amdocs, the patent was
11 solving a problem relating to databases not being able
12 to handle the large amounts of data it was collecting.
13 Id. at *10-11.  The patent allowed for efficiency and
14 smaller databases as opposed to one large database,
15 which had trouble managing all of its data.  Id.  It is
16 a solution specific to a problem with computer
17 networks.  The claims in the '204 Patent are not a
18 solution specific to the functionality of computers.
19 The '204 Patent did not solve a problem of all network
20 information going to one location making it difficult
21 for the database to keep up with new information coming
22 in, nor did it reduce congestion in one large database
23 by creating smaller databases.  Id. at *12.
24    Plaintiff has failed to show any genuine dispute as
25 to any material fact because when looked at
26 individually and combined, the '204 Patent and its
27 claims do not improve computer functionality and do not
28

add an inventive concept.  Thus, the claims of the '204

Patent fail step two of the <u>Alice</u>/<u>Mayo</u> inquiry to be

patent-eligible subject matter under § 101, which

supports granting Defendant's Motion for Summary

judgment.

   3.   <u>Plaintiff's Objections to Defendant's Reply and</u>
        <u>Expert Declaration are Overruled</u>

     The Ninth Circuit has held that "appellants cannot

raise a new issue for the first time in their reply

briefs."  <u>Thompson v. C.I.R.</u>, 631 F.2d 642 (9th Cir.

1980).  Where new evidence is presented in a reply, the

district should either not consider the new evidence,

or not consider it without giving the other party the

opportunity to respond.  <u>Provenz v. Miller</u>, 102 F.3d

1478, 1483 (9th Cir. 1996).  However, where evidence is

"submitted in direct response to proof adduced in

opposition to a motion" it is not "new."  <u>Edwards v.</u>

<u>Toys "R" Us</u>, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal.

2007)(citing <u>Terrell v. Contra Costa Cnty.</u>, 232 F.

App'x 626, 629 n.2 (9th Cir. Apr. 16, 2007)).

     Plaintiff asks the Court to strike assertions

Plaintiff argues were first raised in Defendant's

Reply.  Plaintiff does not make specific evidentiary

objections, instead Plaintiff merely argues Defendant

has included new arguments for the first time in its

Reply and requests those new arguments be stricken or

in the alternative Plaintiff be granted leave to file a

sur-reply.  The first is a figure from J. Glenn

Brookshear's, <u>Computer Science: An Overview</u> (4th ed.
1994), in which Defendant argues this figure is similar
to the '204 Patent in its organization where
information is divided and is then "associated" by some
type of identifier such as an user identification.
Reply 2:15-4:9.  Plaintiff argues Defendant should have
raised this in their Motion and not for the first time
in the Reply.  Evid. Obj. 2:25-3:6.  However, Defendant
raises this because of Plaintiff's argument in the
Opposition about how the claims of the '204 Patent,
specifically this figure, solves a prior problem of
"associating" each "data element" with a specific user
who has "granular control" over the information giving
the user control access to each "data element."  Opp'n
4:14-25.  Defendant's Reply is simply Defendant's
attempt to rebut and contradict Plaintiff's assertion
that the '204 Patent improves computer functionality.
Moreover, the Court did not rely on this figure in its
analysis and finding that the '204 Patent was directed
to an abstract idea and that the claims fail to provide
an inventive concept.  Plaintiff's objection and
request to strike this argument and evidence or be
granted leave to file a sur-reply is overruled and
denied.

Plaintiff also objects to the Declaration of Dr.
Michael Shamos and the five pieces of evidence Dr.
Shamos relies on including textbooks and other patents

Defendant filed with its Reply.  Plaintiff argues this also should have been included in Defendant's Motion. Evid. Obj. 3:7-12.  However, this was done to specifically attack Plaintiff's expert and the arguments Plaintiff raised in its Opposition about how the claims of the '204 patent improved prior systems. Defendant's Reply provided evidence to rebut Plaintiff's assertions.  Dr. Shamos' Declaration attacked Plaintiff's expert with rebuttal evidence. Defendant did not provide "new" evidence.  Local Rule 7-10 provides the timeline of when "Reply Papers" which include a reply memorandum, declarations, or other rebuttal evidence must be served and filed.  The very fact that Defendant included a declaration of its own expert in its Reply is not grounds to strike the Declaration or grant Plaintiff leave to file a sur-reply.  Additionally, the Court did not rely on or utilize Dr. Shamos' Declaration in its analysis and finding that the '204 Patent was directed to an abstract idea and that the claims fail to provide an inventive concept.  Plaintiff's objection and request to strike this argument and evidence or be granted leave to file a sur-reply is overruled and denied.

///

///

///

///

1

**IV. CONCLUSION**

2          Accordingly, the Court **GRANTS** Defendant's Motion

3  for Summary Judgment [53].

4          **IT IS SO ORDERED.**

5

6  DATED: December 2, 2016    s/ RONALD S.W. LEW
                              HON. RONALD S.W. LEW
7                             Senior U.S. District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28